**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

JOSEPH SNYDER,

     Plaintiff,

v.

NABORS GARAGE DOORS, LLC, et al.,

     Defendants.

CIVIL ACTION FILE NO:

1:20-cv-02101-TCB

## **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

COMES NOW, JOSEPH SNYDER ("Plaintiff"), who hereby files his Response in Opposition to Defendant NABORS GARAGE DOORS, LLC, Defendant SERENA MEADOR, Defendant RONNIE MEADOR and Defendant MITCHELL SCHAKER ("Defendants")  Motion for Summary Judgment filed on May 17, 2021, and states as follows:

### **SUMMARY OF PLAINTIFF'S ARGUMENT**

Plaintiff, Joseph Snyder, went to Annual Training with his Georgia Army National Guard unit and on his way back from Fort Stewart he contacted Defendants to assert his reemployment rights under USERRA. Next, Defendant Mitch Schaker called Plaintiff and told him he was fired. He outright refused to reemploy Plaintiff. The decision to fire Plaintiff was made by Defendant Mitch

Schaker, Defendant Serena Meador and Defendant Ronnie Meador by "agreement."

Prior to them terminating Mr. Snyder, Defendants had been devising a scheme to get rid of him because they had grown "annoyed" by Plaintiff's military service. First, they contrived a determination that Plaintiff had lied to them about his military service. Next, after Mr. Snyder explained the situation and though that it was over, Defendants disciplined him with what appeared to be a Performance Improvement Plan just one week before he was supposed to start his two week Annual Training. Defendant Ronnie Meador was mad because he was going to have to find someone to cover Mr. Snyder's shifts—he decided to find a reason to fire Plaintiff. While Plaintiff was on training at Fort Stewart, Defendant made up a reason to fire Plaintiff. However, Defendants often let other employees, who were not in the military, do the same thing that Defendants disciplined Plaintiff for. When Plaintiff asked for his job back by text, Defendant Schaker called Plaintiff and fired him.

Defendants Motion for Summary Judgment must be denied for two reasons. First, Plaintiff filed suit against all of the Defendants for a violation of the reemployment provisions of USERRA. 38 U.S.C. § 4312. Defendants failed to even brief this claim. Second, though Defendants did brief the anti-discrimination/retaliation provisions of USERRA, they have failed to meet the

2

absolute burden the law places on them to prove their defense by a preponderance of the evidence. 38 U.S.C. § 4311. This Honorable Court must deny Defendant's motion.

Finally, pursuant to the Rule, this Honorable Court should grant summary judgment in favor of the Plaintiff. Fed. R. Civ. P. 56(f)(1).

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff incorporates the contemporaneously filed Response to Defendant's Statement of Undisputed Material Facts, as if fully stated herein. *See* Vinnett v. Gen. Elec. Co., 271 F. App'x 908, 915 (11th Cir. 2006).

## I.    PLAINTIFF'S STATEMENT OF MATERIAL FACTS AND GENUINE ISSUES FOR TRIAL

### Plaintiff's Employment History

1.    Plaintiff, Joseph Snyder, is a member of the Georgia Army National Guard and has served both on active duty and in the Guard contiguously for almost 20 years. (Pl. dep. 76:23-25; Pl. dep. 77:1, Pl. dec. ¶ 1).

2.    Plaintiff began working for Defendants, Nabors Garage Doors, LLC, Serena Meador, Ronnie Meador and Mitch Schaker ("Defendants") in June 2018. (Pl. dec. ¶ 3). He was unlawfully terminated by Defendants in July 2019. (Pl. dep. 147:1-12; Pl. Ex. 5).

3.    Prior to coming to work for Defendants, Plaintiff worked for Precision

Garage Doors. (Pl. dep. 8:1-4).

4.    Plaintiff learned the garage door trade from Defendant Ronnie Meador while both worked at Precision Garage Doors. (Pl. dep. 9:18-20)

5.    Defendant Ronnie Meador left employment with Precision Garage Doors and opened Nabors Garage Doors, LLC with his wife Defendant Serena Meador. (R. Meador dep. 7:18-23; S. Meador dep. 15:12-14).

6.    Plaintiff then left employment with Precision Garage Doors and began to work for Defendants. (Pl. dep. 10:2-12; R. Meador dep. 14:3; S. Meador dep. 25:1-2).

**Owners/Supervisors Liability**

7.    Defendant Serena Meador is an owner of Defendant Nabors Garage Doors, LLC. (S. Meador dep. 15:9-14).

8.  Defendant Serena Meador is a supervisor over Plaintiff during his employment. (S. Meador dep. 26:22-25).

9.    Defendant Ronnie Meador is an owner of Nabors Garage Door, LLC. and manager of everyone at the company. (R. Meador dep. 7:18-25; R. Meador dep. 8:1-2; S. Meador dep. 37:21-23).

10.    Defendant Mitch Schaker is the general manager at Nabors Garage Doors, LLC and an owner of Nabors Garage Doors of Dallas. (R. Meador dep. 17:2; S. Meador dep. 95:25; S. Meador dep. 96:1-2; M. Schaker dep. 8:14-15).

4

11.     Defendant Serena Meador, Defendant Ronnie Meador and Defendant Mitch Schaker all had hiring and firing authority at Defendant Nabors Garage Door, LLC over Plaintiff. (S. Meador dep. 32:20-25; S. Meador dep. 34:8-10; Pl. Ex. 1). Defendant Ronnie Meador is an owner of Nabors Garage Door, LLC. and manager of everyone at the company. (R. Meador dep. 7:18-25; R. Meador dep. 8:1-2; S. Meador dep. 37:21-23).

12.     Defendant Serena Meador, Defendant Ronnie Meador and Defendant Mitch Schaker all set the work schedule for Plaintiff at Defendant Nabors Garage Doors, LLC. (Pl. dep. 43:19-24). Both Mitch and Ronnie could authorize Plaintiff to switch schedules with another employee. (Pl. dec. ¶ 13). Plaintiff reminded Defendants constantly that he had annual training in the beginning of July, 2019. (Pl. dec. ¶ 16).

**Mitch Schaker Disciplined Plaintiff on July 5, 2019**

13.     Plaintiff received discipline July 5, 2019 for the make-up drill (militaryservice) set for June 22, 2019 and June 23, 2019. (Pl. Ex. 1; M. Schaker dep. 17:13-15). That discipline was administered by Defendant Mitch Schaker after Plaintiff fully explained what happened with his make-up drill date:

> "I was disciplined by Mitch Schaker on July 5, 2019 based on them saying that I had lied about having to perform a make-up drill on June 22-23. They asked me to

5

explain what happened and I told them exactly why that make-up drill got cancelled—my Guard unit found lead in the ceilings and closed the Armory that weekend. My Guard unit never warned me the Armory was going to be closed. I got up on Saturday, June 22 and drove all the way to the Armory only to find that the doors were locked and I could not perform my make-up drill. This is extremely concerning for me because as a Guard member, I have to have a certain number of drill/AT exercises in order to have a "good year." If I have an unsatisfactory year because I have not had the correct number of trainings, that means that I have to do an entire extra year in the Guard to get to "my 20" in order to retire. In 2019, I had an unsatisfactory year in the Guard because of the problem with the Armory that weekend of June 22-23 and have to do an extra year in the Guard to get to retirement." (Pl. dec. ¶ 17).

14.   Plaintiff was unable to complete the make-up drill on June 22, 2019 and June 23, 2019 because the armory was closed—only to find out at that time that the armory was closed. (Pl. dep. 59:23-18:8; Pl. dep. 60:5-62:7).

15.   Defendant Ronnie Meador demanded an explanation as to why Plaintiff did not attend drill on the weekend of June 22, 2019. (Pl. dep. 201:15-205:15). Plaintiff explained the situation and Defendant Ronnie Meador accepted the explanation. (Pl. dep. 201:15-205:15; Pl. dec. ¶ 17). Then, on July 5, 2019, one

week before Plaintiff was supposed to start his Annual Training with his National Guard unit, Defendants disciplined him for his service. (Pl. Ex. 1; Pl. dep. 201:15-205:15; Pl. dec. ¶ 18). This write up was completely unexpected and came on the heels of Plaintiff continuously reminding Defendants that he was going to be unavailable due to military service beginning on July 13, 2019. (Pl. dec. ¶ 18, ¶ 19).

16.     The discipline related to Plaintiff's service. (Pl. Ex. 1; Pl. dep. 193:14-24; Pl. dep. 211:10-20; M. Schaker dep. 17:13-18:3).

**Mitch Schaker, Serena Meador and Ronnie Meador *agree* to fire Plaintiff**

17.     Plaintiff performed military service for the Georgia Army National Guard July 13-July 28, 2019. (Pl. Ex. 2).

18.     On his way back from his military service on July 27, 2019, Plaintiff contacted Defendant Ronnie Meador and Defendant Mitch Schaker to inform them that he was ready to return to work on July 28, 2019. (Pl. dep. 14:17-15:10; Pl. dep. 201:15-205:15; Pl. dep. 2136-8; R. Meador dep. 28:1-25).

19.     Defendant Ronnie Meador did not answer Plaintiff's text. (R. Meador dep. 32:3-8).

20.     On the day that Plaintiff applied for reemployment, Defendant Mitch Schaker informed Plaintiff that he was terminated because Plaintiff had removed his own tools from his work truck when he turned it in. (Pl. dep. 14:2- 8).

7

21.     Prior to this exchange, Defendant Ronnie Meador contacted Plaintiff to inquire about the whereabouts of Plaintiff's personal tools. (Pl. Ex. 3). Plaintiff was unable to respond immediately because of his service. (Pl. dep. 202:1-15).

22.     Defendant Ronnie Meador admitted that the delay in response was due to Plaintiff's military service. (R. Meador dep. 45:21-46:1). Plaintiff informed Defendant Ronnie Meador and Defendant Mitch Schaker that if he was promised that only Defendant Ronnie Meador would utilize his tools, then Defendant Ronnie Meador could retrieve them from Plaintiff's home which was in the same neighborhood as Defendant Ronnie Meador. (Pl. Ex. 3; Pl dep. 10:16-19).

23.     Defendant Ronnie Meador allowed other, non-military employees to remove their personal tools from their work truck. (Pl. dep. 145:12-17). James Meador admitted to Plaintiff that he had removed his tools from the truck and James Meador was never disciplined. (Pl. dep. 148:8-13).

24.     Employees were allowed to have their own tools on the truck. (S. Meador dep. 106:2-8). Defendants have never produced an accounting of what tools are Defendants' tools and what tools are Plaintiff's tools. (S. Meador dep. 49:16-50:15; R. Meador dep. 37:23-46:1). Plaintiff accurately recounted precisely which tools he removed from the truck and unequivocally stated that the tools he removed were his tools. (Pl. dep. 23:3-24:11). Plaintiff added that the reason for removing the tools was because the last time Defendant Ronnie Meador used his

8

truck, some of his tools had gone missing. (Pl. dep. 203:1-23).

25.     Plaintiff begged for his job back and even offered to pay Defendant Ronnie Meador for the tools that he bought. (Pl. dep. 14:15-25). Defendant Serena Meador admitted that it was company policy when a tool was missing to allow the employee to explain and/or reimburse the company for the expense. (S. Meador dep. 50:3-8). Plaintiff was not given the opportunity to reimburse the company. (Pl. dep. 14:5-25). Plaintiff was willing to do whatever it took to have his job back, even reimbursing Defendant Ronnie Meador for expenses he claims to have incurred due to Plaintiff's military service. (Pl. dec. ¶ 24). Defendant Ronnie Meador had his own tools. (Pl. dec. ¶ 21)

26.     The Georgia Department of Labor awarded Plaintiff unemployment compensation and finding no wrong-doing on Plaintiff's part. (Pl. Ex. 4). The Georgia Department of Labor found specifically that Plaintiff had "properly notified your employer when absent/tardy." (Pl. dec. ¶ 9).

27.     The decision to terminate Plaintiff was an "agreement" made among Defendant Serena Meador, Defendant Ronnie Meador and Defendant Mitch Schaker. (S. Meador dep. 34:6-10). Defendants Nabors, Serena Meador, Ronnie Meador and Mitch Schaker refused to reemploy Plaintiff on July 28, 2019 when Plaintiff was ready, willing and able to return to work. (Pl. dec. ¶ 9).

**Circumstantial evidence of discrimination**

28.   <u>Temporal proximity</u>. Plaintiff was fired the day he asked for his job back. (Pl. dep. 14:5-25).

29.   <u>Inconsistent reasons</u>. Plaintiff was told that he was fired for removing his tools from the truck and the Georgia Department of Labor was told Plaintiff was fired for tardiness/absences. (Pl. Ex. 1; Pl. Ex. 4). Plaintiff did not violate any of Defendants' alleged rules. (Pl. dec. ¶ 5, ¶ 9, ¶ 15, ¶ 19, ¶ 20).

30.   <u>Anti-military animus</u>. Plaintiff was constantly harassed about when he was getting out the military. (Pl. dep. 183:23-186:14). Plaintiff had to endure name calling like "GI Joe," "Soldier Boy," and being called a "tampon" because of his military service. (Pl. dep. 71:23-72:11). These statements are derogatory toward military service. (Pl. dec. ¶ 26)

31.   <u>Disparate treatment</u>. None of the decision makers is a veteran and the decision makers let other employees get by with the same conduct for which Plaintiff was fired-namely removing tools from the truck and misplacing tools which presumably could be simply reimbursed. (Pl. dep. 14:17-15:2; Pl. dep. 145:12-17; Pl. dep. 148:8-13).

## II.   <u>MEMORANDUM OF LAW</u>

## <u>Summary Judgment Standard</u>

A plaintiff will always survive summary judgment if he presents

circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent. *Smith v. Lockheed-Martin Corporation*, 644 F.3d 1321, 1328 (11th Cir. 2011).

At summary judgment, courts have routinely found that the appropriate analysis in determining a violation of 38 U.S.C. §4311 is the framework established by *NLRB v. Transp. Mgmt. Corp.,* 462 U.S. 393, 401 (1983). *See also Kelley v. Maine Eye Care Assocs., P.A.,* 37 F. Supp.2d 47, 54 n.8 (D.Me. 1999) (noting that a majority of courts follow the burden-shifting formulation for USERRA cases); *Sanguinetti v. United Parcel Serv., Inc.,* 114 F. Supp.2d 1313, 1318 (S.D.Fla. 2000).

Using the NLRB framework, a plaintiff seeking to prevail under USERRA must establish that he was a member of a protected class or engaged in a protected activity and that his protected status was a motivating factor in an adverse employment. *Hill v. Michelin N. Am., Inc.*, 252 F.3d 307 (4th Cir. 2001). The burden then shifts to the employer to avoid liability by showing that it would have made the same employment decision regardless of the plaintiff's protected status. *Id*.

## Liability of Supervisor Mitch Schaker, and the owners/managers

Under USERRA, Mitch Schaker is liable to Joe Snyder for the injuries created by his violations of law. Because of USERRA's broad definition of

"employer," supervisors and other individuals can be found liable for their unlawful actions with respect to a service member's employment status. See § 2:6, *The USERRA Manual* (2021).  That is to say, anyone who "pays salary or wages for work performed" or "has control over employment opportunities" is an "employer" within the meaning of the Act. *Id*. This includes "a person to whom [an] employer has delegated the performance of employment-related responsibilities." *Id*. For instance, a company president to whom the employee reports can be held liable. *Novak v. Mackintosh*, 919 F.Supp. 870, (D.S.D. 1996). Individuals who have been delegated authority to fire an employee can be held liable. *Rimbey v. Mucky Duck, Inc.*, 2017 WL 2812507, (M.D. Fla. 2017). And, supervisors who are merely involved in the process of firing an employee can be held liable. *Baldwin v. City of Greensboro*, 2010 WL 3211055, (M.D.N.C 2010).

Here, it is quite evident that all three individually named defendants have exposure as it pertains to USERRA liability. (S. Meador dep. 32:20-25; S. Meador dep. 34:8-10; Pl. Ex. 1). Ronnie Meador was one of Plaintiff's managers. (R. Meador dep. 7:18-25; R. Meador dep. 8:1-2; S. Meador dep. 37:21-23). He directed Joe Snyder's work and created his schedule. (R. Meador dep. 7:18-25; R. Meador dep. 8:1-2; S. Meador dep. 37:21-23). He was involved in Mr. Snyder's termination. (S. Meador dep. 34:6-10).

Serena Meador was the company president, supervised Plaintiff and was

involved in the conversation whereby there developed an "agreement" between the three individuals to fire Plaintiff. (S. Meador dep. 34:6-10). And finally, Mitch Schaker determined Plaintiff's schedule. (Pl. dep. 43:19-24; Pl. dec. ¶ 13). He authorized Plaintiff to switch his work schedule with another employee so that Plaintiff could go to drill. (Pl. dep. 43:19-24; Pl. dec. ¶ 13). He was the one who signed Plaintiff's discipline on July 5, 2019 and the one who signed Plaintiff's termination notice. (Pl. Ex. 1; Pl. Ex. 5). He too was party to the "agreement" to fire Plaintiff. (S. Meador dep. 34:6-10).  All three are individually liable.

## Defendant failed to brief Plaintiff's Failure to Reemploy claim (Count I)

Plaintiff's Amended Complaint contains two counts—1) Violation of USERRA for failure to reemploy Plaintiff after he completed his military service and 2) Discrimination against Plaintiff in violation of USERRA. Courts have routinely recognized the difference between the reemployment claims under 38 U.S.C. § 4312 and discrimination claims under 38 U.S.C. § 4312. *See e.g. Petty v. Metro. Gov't of Nashville-Davidson Cty.*, 538 F.3d 431 (6th Cir. 2008). See also 20 CFR 1002.33 (the employee is not required to prove that the employer discriminated against him in order to be eligible for reemployment).

Defendants failed to brief the failure to reemploy claim or otherwise defend at the summary stage and therefore summary judgment must be denied as to each Defendant—Nabors Garage Doors, Serena Meador, Ronnie Meador and Mitch

Schaker. Alternatively, this Honorable Court should grant summary judgment in favor of Plaintiff Joseph Snyder based on Plaintiff's Motion for Partial Summary Judgment [DOC 43]. Fed. R. Civ. P. 56(f)(1).

## Defendants discriminated against Plaintiff

Defendants here have correctly cited the burden shifting analysis utilized by the Court in determining whether a Plaintiff's military service is a motivating factor in a Defendants' adverse employment decision. *Coffman v. Chugach Support Services, Inc.*, 411 F.3d 1231, (11th Cir. 2005). Second, the Defendants here also astutely point out that the Court may infer discriminatory motivation from a variety of considerations such as: "(1) the temporal proximity between the plaintiff's military activity and the adverse employment action; (2) inconsistencies between the proffered reason for the employer's decision and the other actions of the employer; (3) an employer's expressed hostility towards members of the protected class combined with its knowledge of the plaintiff's military activity; and (4) disparate treatment of similarly situated employees." *McMillan v. DOJ,* 812 F.3d 1364 (Fed. Cir. 2016).

However, the Defendants get the analysis wrong.

Temporal proximity.

Mr. Snyder was disciplined right after he reminded Defendants that he had to perform his Annual Training with his Georgia Army National Guard unit. (Pl. dec.

14

¶ 16). Plaintiff went on Annual Training with his Georgia Army National Guard unit at Fort Stewart Georgia on July 13, 2019 and he was fired the day he asked for his job back. (Pl. dep. 14:5-25).

Inconsistent reasons.

Plaintiff was told that he was fired for removing his tools from the truck and the Georgia Department of Labor was told Plaintiff was fired for tardiness/absences. (Pl. Ex. 1; Pl. Ex. 4). Plaintiff did not violate any of Defendants' alleged rules. (Pl. dec. ¶ 5, ¶ 9, ¶ 15, ¶ 19, ¶ 20).

Anti-military animus.

Plaintiff was constantly harassed about when he was getting out the military. (Pl. dep. 183:23-186:14). Plaintiff had to endure name calling like "GI Joe," "Soldier Boy," and being called a "tampon" because of his military service. (Pl. dep. 71:23-72:11). These statements are derogatory toward military service. (Pl. dec. ¶ 26)

Disparate treatment.

None of the decision makers is a veteran and the decision makers let other employees get by with the same conduct for which Plaintiff was fired-namely removing tools from the truck and misplacing tools which presumably could be simply reimbursed. (Pl. dep. 14:17-15:2; Pl. dep. 145:12-17; Pl. dep. 148:8-13).

**Failure to reemploy a returning military service member is direct evidence of a USERRA violation**

It is undisputed in this case that Defendants refused to reemploy Plaintiff Joseph Snyder upon his return from Annual Training. That violation of law under USERRA can but construed as direct evidence of discriminatory intent. *See Brown v. Houser*, 129 F.Supp.3d 1357, (N.D. Ga. 2015)(Defendant bears the burden of proving that its stated reason for termination is *not* pretext for discrimination on the basis of military service) (*emphasis added*). And, just as it is clear that Defendants refused to reemploy Plaintiff knowing that it was a violation of the statute, it is also clear that the intent to violate the reemployment provisions of the statute construes Defendants intent to discriminate against Joe Snyder because of his military service.[1] That is, Davin Smith, a fellow employee of Plaintiff's, told Defendant Ronnie Meador that not giving Joe Snyder his job back after he got back from Annual Training was against the law. (Pl. dec. ¶ 25). Defendants knew what they were doing was wrong. (Pl. dec. ¶ 25).  But, they attempted to create a ruse around the termination of Joe Snyder in an effort to avoid the stricter rules associated with the reemployment provisions of USERRA. The problem with that action is that it

---

[1] *See also Towler v. Electrical Reliability Services, Inc.*, 2015 WL 641792 (N.D. Ga. 2015) (recognizing the distinction between 38 USC 4311 and 38 USC 4312 and determining that a Plaintiff can also assert a discrimination claim when the fact giving rise to the claim are for failure to reemploy).

creates direct evidence of the intent to discriminate against this military member.

Plaintiff has advanced direct evidence of Defendants' discriminatory intent and therefore summary judgment in favor of Defendants here is improper.

**Defendants cannot meet their burden of proof**

As stated previously above, once Plaintiff shows that Defendants were motivated to act against him because of his military service, the burden shifts to Defendants to prove through production that their stated reason for the adverse action is valid. *Hill v. Michelin N. Am., Inc.*, 252 F.3d 307 (4th Cir. 2001). These Defendants cannot prove their alleged defense. *Reed v. Honeywell Intern., Inc.*, 2009 WL 886844, (D. Ariz. 2009)(summary judgment denied where there is not fair warning to employee that his behavior would be grounds for discharge); *Anderson v. Sandford L.P.*, 2008 WL 351227, (E.D. Tenn. 2008)(summary judgment denied where defendants' allegation that Plaintiff failed to meet requirements of a PIP presented question of fact of whether the allegation was actually pretextual); *Thompson v. Shutterbug Ed's of Caldwell, Inc.*, 1977 WL 9529 (D.N.J 1977)(unfounded belief that Plaintiff engaged in misconduct was not valid reason for termination); *Weaver v Madison City Board of Education*, 20156 WL 3806825, (N.D. Ala. 2015)(Employer's expressed financial concerns relating to Plaintiff's military service is evidence of discriminatory motive).

Here, it is abundantly clear that Defendants were motivated to fire Plaintiff

because of his service. Defendant Ronnie Meador was upset that he was going to have to find a replacement for Plaintiff while Plaintiff was on military service. (Pl. dec. ¶ 19). Though Ronnie Meador had his own tools, he made up a reason to fire Plaintiff, stating that he had to go purchase tools that Plaintiff removed from the truck. (Pl. dec. ¶ 20, ¶ 21). The problem with that assertion is Ronnie Meador had already let non-military employees remove their own tools from the work trucks and then did not let Plaintiff who was on military service remove his own tools from the truck. (Pl. dec. ¶ 23). Serena Meador let employees just replace missing tools. (S. Meador dep. 50:3-8). Non-military employees were treated differently than Plaintiff and therefore Defendants cannot meet their burden of proving their defense. Each is liable to Plaintiff for the violations of USERRA.

### III.   **CONCLUSION**

Based on the forgoing, Plaintiff respectfully requests that the Court deny Defendant's motion for summary judgment.

Respectfully submitted this 7th  day of June 2021.

Thomas L. Dickens, III,  Esq.
Florida Bar No.: 063687
**PRO HAC VICE**

*/s/ADEASH A. LAKRAJ*
Adeash A. Lakraj

18

Georgia Bar No. 444848
91 Peachtree St. NE, Suite 4200
Atlanta, GA 30303
Telephone: (404) 965-1909
          (407) 420 1414
Facsimile:   (407) 245-3342
Email:  tdickens@forthepeople.com
alakraj@forthepeople.com
**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE AND
## COMPLIANCE WITH LOCAL RULE 5.1(C)

**I HEREBY CERTIFY** that a true and complete copy of this document was

delivered by electronic service to counsel of record this 7th day of June 2021.

**I HEREBY CERTIFY** that a true and complete copy of this document was

delivered by electronic service to counsel of record this 7th day of June 2021.

I also certify that the foregoing has been prepared in a Times New Roman

14 point font, one of the front and point selections approved by the Court in Local

Rule 5.1(C).

/s/ THOMAS L. DICKENS
Thomas L. Dickens, III,  Esq.
Florida Bar No.: 063687
**PRO HAC VICE**

*/s/ADEASH A. LAKRAJ*
Adeash A. Lakraj
Georgia Bar No. 444848
91 Peachtree St. NE, Suite 4200
Atlanta, GA 30303
Telephone: (404) 965-1909
          (407) 420 1414

19

Facsimile:   (407) 245-3342
Email:  tdickens@forthepeople.com
alakraj@forthepeople.com
***Attorneys for Plaintiff***